Good morning, ladies and gentlemen. Our first case of the morning is 120729, people ex rel. Anita Alvarez v. the Honorable Carol M. Howard. Are you ready to proceed? Good morning. Honorable Justices of the Court, may it please the court, Assistant State's Attorney Noah Montague on behalf of the petitioner of the Cook County State's Attorney Anita Alvarez in this case. Your Honors, this case began when a 15-year-old shot two people, killing one in early 2013. Under the law in effect at the time, the defendant was charged in criminal court. The case was pending for nearly three years and set for trial early this year. Last summer, the Illinois General Assembly amended the provision that mandated that his case be filed in criminal court. They raised the qualifying age from 15 to 60. The respondent here, the circuit court judge, ruled that that amendment applied retroactively to this defendant. She transferred the case to juvenile court so that the state could then move for a discretionary transfer back to criminal court. The respondent based her ruling on two findings. The first, that the legislature intended the law to be applied retroactively, and the second, that in the alternative, it applied retroactively because it was procedural in nature. The respondent's ruling and order in this case was without legal authority and contrary to Illinois law. The petitioner here has no other remedy because under Rule 604, because there are further proceedings intended in this case, the petitioner cannot appeal, and so we are asking this court to issue a writ of mandamus or prohibition rescinding the circuit court's order. Let me ask you a quick question on that. Does this case move straight to a transfer hearing or would it have to begin anew with the filing of a petition for adjudication or wardship? Under the Juvenile Court Act, in order to be before that court, there would have to be a petition for adjudication or wardship. So the case would have to begin anew. Your Honor, the finding of retroactivity in this case was made based solely on an omission, on the omission in the legislation itself, Section 5-130 of the Juvenile Court Act. Let me stop you one more time. Is that relevant with respect to your argument as to whether it's dismissing the charges or not, the fact that the case has to begin anew? Or has the substantive effect, rather, of dismissing the charges? Under Rule 604, the substantive effect of a dismissal does allow for appeal in most instances, but in this instance, under this court's decision, people versus heavens, in that case there was an actual dismissal, an explicit dismissal of the case, but the court also, when it dismissed the case, held the defendant in custody, and because he was held in custody with the expectation that there would be further proceedings, this court ruled that there could be no appeal under Rule 604 because further proceedings were contemplated. In this case, the same thing happened, except there was no explicit appeal, and in fact, if this court looks at the motion filed by the defendant, the defendant never challenged the indictment. The court here issued two orders, and in neither order did the court ever say that the indictment was dismissed, but more importantly, the court in both orders explicitly stated that the case was being transferred so that the state could then move for a transfer hearing, and just as in headings, this defendant was held in custody and remains in custody even now with the expectation of further proceedings. So under this court's ruling in headings, the state had no remedy under Rule 604, and we could not appeal. The circuit court's finding here that the law was retroactive was based solely on the fact that the law itself did not include an explicit statement of prospectivity, which is often referred to as a savings clause. That finding, based solely on omission, not on anything that was actually stated within the text of the amendment itself, was entirely contrary to Illinois law, which presumes that all laws are prospective. If the presumption of prospectivity is to mean anything, it must hold up against nothing, and that's what is presented by this case. The amendment at issue here is simply two lines marking out two subsections and a 16 written in place of a 15, and Respondent even conceded in her order that it was silent on the temporal reach, which means that there was no other way. There was, of course, no statement mandating the law to be applied retroactively. Mr. Monacchi, though, since the resolution of the issue actually rests on our determination of the legislative intent, can we actually glean from that intent from the language of the statute as a whole? For instance, the fact that the paragraph 1Bi, the statute provides that if prior to trial, an information or indictment no longer charges an offense that is subject to automatic transfer, the offense must be tried in juvenile court. And since no trial has occurred in this case, why shouldn't we apply that same reasoning here? Well, that language is from the law that applied previously. That's not an amended language. So the intent of this amendment is based on the actual text of this amendment, and the text of this amendment is limited to the crossing out of the line of the two subsections and the replacement of the 16 and the 15. What the legislation here showed was that there was no statement mandating retroactive intent, and because there was nothing in the law, there was nothing to overcome the presumption of prospectivity. But what the court did here went a step further than simply saying that presumption of prospectivity was overcome by an omission in the statute. What the court did here was to effectively hold that laws are retroactive unless and until there is a statement of prospectivity within them, and that is entirely contrary to Illinois law. There's a body of law, Mr. Montague, right, that you would say that this amendment was procedural, right? Strictly procedural? That is correct. And is opposing counsel wrong when he indicates in his brief that it may be applied retroactively unless doing so would offend the Constitution? That is incorrect, Your Honor. That's wrong? Yes. The laws which previously... Let me stop you before you get going. Would you agree, first of all, that applying this amendment retroactively would not offend the Constitution? I'm not trying to trap you, but... The petitioner is aware of no offense to the Constitution by retroactive application. Okay. Well, now you better tell us why that isn't the law, then. Correct. Under Illinois, once this court adopted the Landgraf test, this court left behind and abandoned the vested rights approach. The vested rights approach is what used primarily the substantive versus procedural divide. Under Illinois law now, the Landgraf approach treats both procedural and substantive amendments the same. Where the substantive and procedural divide comes back up in Illinois, still to this day, is based on the application of the General Savings Clause, Section 4 of the Statute on Statutes, which has been held to treat the two laws differently, two types of laws differently. However, what this General Savings Clause says, as far as proceedings, is that it's divided based on the posture of the case. And what you can see in the plain language of the General Savings Clause is that it says, Any number of known new laws should be construed to effect... It lists a great number of things. It's a 19th century law. The language is somewhat archaic and difficult to read. But it lists offenses, punishments, penalties, forfeitures, claims, acts done. None of these things can be effected based on a new law that, when they arise prior to the law coming into effect, save only. In that language, save only is a very strong exception. That means this is the one and only exception. The proceedings thereafter can conform to the laws in effect at the time. Now, that language, proceeding thereafter, means that if there is a proceeding that comes up in the case after the new law takes effect, that new law can be applied to it. Here, there is no question that the proceeding under 5-130 took place in 2013. It's a charging statute. And this, the way the General Savings Clause is structured based on the procedural posture of the case is not something new. It's not a newfangled idea. It's not even unique to the state of Illinois. And you can see in the history of retroactivity law that most of these ideas, like the General Savings Clause itself, have been around for a long time. Justice Bolandic's concurrence in the Ramsey case is an invaluable tool for looking at the history of retroactivity law. But the Landgraf opinion itself is also very valuable. And there's a point in the Landgraf opinion that should be considered here because the Landgraf majority was responding to an argument made by the dissent on procedural laws and how they should apply retroactively. And their response is spot on for not just this case, but the General Savings Clause in general. And the response is in footnote 29 of this case. But it's very instructive for this case that the Supreme Court there said, of course the mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime and the promulgation of a new rule of evidence would not require an appellate remand for a new trial. Our orders approving amendments to federal procedural rules reflect the common sense notion that the applicability of such provisions ordinarily depends on the posture of the particular case. Now obviously that's important for two reasons. One, they use as an example the exact circumstance presented by this case as something where a procedural amendment would not apply. And it's also important because what they're doing here is responding to an argument that is very similar to the one the respondent made here, but they're also doing it in a historical discussion of the history of retroactivity law. And as we are here in part discussing the General Savings Clause, which itself is a message of the history of retroactivity law, this puts into light what is going on in the General Savings Clause and how it should be interpreted, that that proceedings thereafter language is this common sense notion that the applicability of provisions depends on the posture of the particular case. It is also important to note in this case that what the respondent did was not just against the presumption of prospectivity, but she also ruled that the law was retroactive despite the fact that there is evidence of prospectivity in the law in the fact that the law was delayed in its implementation. The law, of course, was passed last summer. It was signed by the government in August, but didn't go into effect until January. And this Court has held over the years on a number of occasions that the delay in implementation of the law is direct evidence of that law's legislative intent for prospectivity. And that evidence was also here, and the Circuit Court simply ignored the fact that the delay came from the Effective Data of Laws Act is not significant in this case, where this Court ruled in Commonwealth Edison v. Will County Collector on a delay that was based on the Effective Data of Laws Act and found that that delay would be dispositive but for the existence of a statement of retroactive intent. There is no statement of retroactive intent here, and so the delay of the law should be dispositive, and the Circuit Court here should have found it to be prospective. Your Honors, the order issued by the Circuit Court here was without legitimate authority. It was contrary to Illinois law and the presumption of prospectivity on the effect of delayed amendments and on the plain meaning of the General Savings Clause. The petitioner here has no other remedy, and so we would ask this Court to issue a writ of mandamus for the petition. Thank you.  May it please the Court, Counsel, I am Assistant Attorney General Gopi Keshav, and our office was appointed by the Administrative Office of the Illinois Courts to represent Respondent, the Honorable Carol M. Howard, in this case. Your Honor, this case is about legislative intent, and this Court's established statutory retroactivity jurisprudence dictates that the legislature here intended the amendment to the excluded jurisdiction provision to apply retroactively to defendants' ongoing criminal prosecution. The parties agree that the Amendment Act itself has no express statement of the amendment's temporal reach. Thus, under established precedent, the legislature's intent as to the amendment's temporal reach must be determined under the statute on statutes. And as petitioner agrees, under that provision, if the law is purely procedural, which it is here, it affects no substantive rights, and if it doesn't affect, if it doesn't violate the Constitution to impose it retroactively, then it does apply retroactively, Your Honors. Therefore, under a straightforward application of Section 4, the amendment applies to defendants' case. First, Your Honors, I'd like to turn to petitioner's argument regarding the proceedings thereafter shall conform to the laws enforced at the time of such proceeding. Your Honors, the proceeding at issue under that provision is the juvenile's ongoing criminal prosecution. The plain language of the amendment itself states these charges, and all other charges arising out of the same incident, shall be prosecuted under the criminal laws of the State. And here, Your Honors, so what the amendment does, Your Honors, is remove defendant from the class of offenders that can be prosecuted in criminal court, and it places defendant into the class of offenders to which a juvenile delinquency proceeding must be initiated. And thus, the current proceeding under the plain language of Section 4 is the juvenile's criminal prosecution, which here, the trial has not even begun yet, and certainly the mere filing of charges does not complete a prosecution. And so the ongoing prosecution, so the amendment must apply to the ongoing prosecution. And as Justice Burke points out, Section B1 does strongly suggest that the legislature intended that this amendment govern, and that proceedings start back in juvenile court because the charges no longer allow for criminal prosecution. Turning then, Your Honors, to the juvenile's effective date argument, Your Honors, the Effective Date Act governs something very different than the statute's temporal reach. The Effective Date Act merely determines, as its title states, when a statutory enactment goes into effect. But the question of what happens to an ongoing proceeding after the change becomes effective, and specifically how far back does the new law go to regulate events, is determined by the statute on statutes, which directly governs and dictates the temporal reach of all statutory enactments and repeals in Illinois. And as stated, Your Honors, under the statute on statutes, the amendment applies retroactively. While we would agree, Your Honors, that the express postponement of an effective date is evidence that the legislature did not intend retroactive application, that is because in the statutory retroactivity analysis, the first step is to look at the express statements by the legislature. And legislative default rules, like the statute on statutes, do not govern if there's an express statement in the actual legislation. And the source of that rule in this court, Your Honor, is Justice Freeman's concurrence in Ramsey. And Justice Freeman stated there that where the legislature included no language expressly indicating retroactive application, and instead, quote, explicitly stated the new law's effective date should be postponed, then the legislature clearly did not intend to apply the change retroactively. And here, the legislature included no effective date. And to the contrary, Your Honors, the legislature did strongly indicate its intent that the amendment apply to defendant's case by expressly making perspective in the same amendatory act a similar change to the juvenile court act's transfer provisions. And it did so with full knowledge of this court's prior precedent holding that procedural changes apply retroactively and that a change to the excluded jurisdiction provision is a procedural change. So we must give that legislative intent effect, Your Honors. I'd also like to note, Your Honors, that Landgraf didn't do away with the proposition that procedural rules generally apply retroactively, which has been well established in this court's precedent. As petitioner agrees, Landgraf's second step, the judicial default rule that does not apply here because the legislative default rule applies, under that step, the retroactive impact factors themselves relate to substantive rights, as petitioner calls them, festive rights. And festive rights, as this court has noted, are those protected by the Constitution. So in the end, Your Honors, a procedural statute that, if applied retroactively, does not offend the Constitution, does apply retroactively, and this court has never imposed any other limitation on doing so. Your Honors, I'd like to turn to Rule 604A for a moment. Petitioner is wrong that Respondent's Order contemplated further proceedings in this action. Respondent's Order itself transfers the case to the juvenile division, and as Justice Thomas pointed out, the state must initiate a juvenile delinquency proceeding by filing a petition. Thus, there are no longer any proceedings in criminal court on the criminal indictments, and so the substantive effect of the transfer order was to dismiss the indictments. And furthermore, Your Honors, the fact that the petitioner may obtain a transfer, it might not obtain a transfer, of course, that's up to the juvenile court, does not mean that the effect of the transfer order was not to dismiss the indictments. So, Your Honors, under Rule 604A, the state could have appealed the decision. However, this case presents an issue that is very important to the administration of justice, and that is why we've asked this court to address the question under its supervisory order. You make no claims or arguments regarding the issue of whether the state's attorney has standing to even proceed, and this is one of three mandamus cases we're hearing during this term, and that issue has been raised. Do you have a position on that? In this case, Your Honor, our position is that the Attorney General has the exclusive authority to proceed in this court, but by not objecting to the filing of the mandamus complaints, there's no question of Cook County's standing in this case. And so if the Attorney General's office in any case makes no objection to standing, then it's your position that even if a defendant raises the issue, the state's attorney's office of Cook County does have standing. Is that correct? Our position is that it is our authority to assert, and a defendant cannot assert that authority. A private litigant can't assert it, and a municipality can't assert it. And so unless we've asserted that authority, Cook County, and the two cases I think gone is the case Your Honor may be referring to, and in that case, again, like this case, we have not asserted our authority and have not objected to the filing of the complaints. Okay. Thank you. Thank you. Counsel, are you asserting the rule of lenity to apply in this case? No, Your Honors, we haven't asserted that here. It hasn't been briefed, and to the extent this court would like us to brief it, we'd be happy to. Thank you. Thank you. Good morning, Your Honors. My name is Frank Tedesco, and I represent Louis, Montana, and the underlying litigant here, Judge. Justices, excuse me. Judge, I would adopt everything that the attorney general's office said in regards to the retroactive activity analysis. Judge, this is the statutes. The amendments were purely procedural. This court has held over and over again that the transfer provisions of the Juvenile Court Act are purely procedural. Under Landgraf, this court is in cabinet, has indicated that in most cases, we never get to the second step of Landgraf, because if the legislature clearly expresses its intent, then unless there's a constitutional prohibition, the legislature's intent carries. Now, the legislature clearly has the ability to say who's included in juvenile jurisdiction and who's not. The legislature clearly has the ability to denote which form, whether it's the juvenile justice division of the circuit court or a criminal part. In this case, the legislature chose to make a change, a significant change, and essentially removed Mr. Montano from automatic criminal prosecution. The state argues that there's a retroactive impact, but when you look at the statute and this court's rulings, even in Patterson, Judge, that the procedural changes apply to pending cases. There is no retroactive impact here. The state still has the ability to prosecute Louis Montano if it prefers to do so. It's just that the question is, what division of the court is he being treated under? The state still has the ability to – doesn't have to prove anything in addition to prove first-degree murder, whether it's in juvenile court or criminal court. And Judge Howard's order doesn't prohibit the state's attorney's office from seeking to move Mr. Montano from juvenile court back to criminal court and have a trial. There certainly is no retroactive impact. The fact that the state may have to engage in another procedure, being a juvenile transfer hearing, does not bar them from prosecuting Mr. Montano in criminal court if they're able to prove that Mr. Montano cannot have any benefits in juvenile court or that criminal court is the proper forum. And what the legislature did here when they changed that was they made a conscious decision that 15-year-olds should no longer be subject to automatic adult prosecution. And they did that because the children are treated differently. The legislature made a decision to quit treating 15-year-olds as automatically subject to adult prosecution. And the fact that if Mr. Montano's case goes to juvenile court and remains there, that he may receive less punishment or be subject to less punishment, that does not constitute a retroactive impact. The state's also argued in the briefs that it's not practical to transfer Mr. Montano's case to juvenile court. And justices, it may be inconvenient for the state, but it's certainly practical to transfer a juvenile case from criminal court to juvenile court where they can then seek a discretionary transfer hearing. Judge Howard's decision, I believe, was within the law, followed the court's precedent, and the state is not entitled to a written amendment. Thank you, justices. Thank you. Just briefly, Your Honors. The petitioner wished to clarify one point previously stated that as the case stands right now, because the indictment actually was not dismissed, even if the state had to file a petition in the juvenile court, and if the case was transferred back to the criminal court, it would not have to start anew because the indictment has never been dismissed. As for the arguments on the Effective Data Laws Act, one thing the petitioner would point out is that in this court's case law, in People v. Brown, G&C v. Papas, these cases have found that explicit statements delaying the law are not, in effect, statements that the laws are expressed statements for prospectivity, but that these are direct evidence of legislative intent. The application of the Effective Data Laws Act is equally evidence of legislative intent because the same logic applies here as it does in the case where there is an express statement. In both cases, the law is delayed, so if the legislature intended, as is necessary in retroactivity, to affect things that have already occurred, it makes no logical sense to force the law off further into the future, and that's why it's direct evidence of prospective intent, and that applies equally under the Effective Data Laws Act. Mr. Monaghan, what significance is there that the legislature did employ a savings clause with respect to other amendments in the same public act? As far as the retroactive activity analysis of this particular provision, nothing. This court actually held last year in J.T. I. Noter that courts are not allowed to look at the other provisions of a law in order to determine the court's legislative intent. But if this court looks at what the legislature did here, this is really just one piece in a much larger legislative change because the General Assembly last summer passed three different juvenile criminal justice public acts. In these three public acts, 99-69, 99-258, and 99-268, this case involves 258. 69 involves sentencing changes, and 268 involves changes to things like aftercare release, data collection, and various other things. But if the court looks at what the legislature did in those three public acts, you'll see three things. One, obviously, they all involve changes to juvenile law. In all those changes, there is not one statement of retroactive intent to any one of the statutory provisions changed in those three public acts. And they're all delayed to January 1st of this year, and there are multiple parts of each of the public acts that are explicitly prospective. And so over those three public acts, there's explicit statements of prospectivity, and there's a common delay to all three, but there is no evidence of retroactivity whatsoever. So it is the petitioner's position that there is no evidence at all of retroactive intent. And one thing this court can see, here we are talking about the savings clause in Section 5-805, which is the transfer provision that was also changed by 99-258. I realize that's a lot of numbers. But most of the changes that were involved in these public acts restricted the amount of transfers that could go from juvenile court to the criminal court and changed the sentencing law so that most sentencing of juveniles is now under a new provision, 5-4.5-105. Both that new sentencing provision and 5-805 have explicit statements of prospectivity in them. So the overall scheme of what the legislature did, it becomes clear in looking at the whole that it was intended to be prospective. And one other thing to consider and compare here when you look at Respondent's position is that it wasn't that long ago in the 90s when the Illinois legislature decided to expand the reach of criminal law over juveniles. And so if this court were to apply the same logic that Respondent is saying, if the wheel comes back around again and the legislature again expands the reach of criminal court over juveniles, Respondent's theory of retroactivity would have juveniles with pending cases in juvenile court told one day once a new law comes into effect, you are no longer in juvenile court, you must go to criminal court. But that would not be an intended result and I think it could be fairly called an absurd result because the posture of the case does matter and it is dispositive under Illinois law under the General Savings Clause. One argument was made on retroactive impact factors, that those are somehow limited to constitutional rights. This again is an argument where Respondent is effectively arguing in favor of a return to the vested rights approach. The vested rights approach was abandoned when this court adopted the land grab approach. And furthermore, the vested rights retroactive impact has been held there to be retroactive impact whenever new duties are imposed. The court explicitly created a new duty for the state here by saying that the state must move for a discretionary transfer. And under Respondent's position, the indictment is effectively dismissed and that is also retroactive impact. Your Honor, so is the petitioner's position here that this law was, that this order was made without legitimate authority and contrary to Illinois law and that the petitioner has no other remedies that we would ask this court to issue a writ of mandamus or a probe issue? Thank you. Thank you. Case number 120729, People x Rel Anita Alvarez v. The Honorable Caroline Howard, Judge of the Circuit Court of Cook County, will be taken under advisement as agenda number nine. Mr. Montague, I suppose you've been Mr. Tedesco, thank you for your arguments this morning. You are excused at this time.